MATHER, Appellee,

v.

**LOVELAND CITY SCHOOL DISTRICT BOARD OF EDUCATION et al., Appellants.**

[Cite as *Mather v. Loveland City School Dist. Bd. of Edn.*, 181 Ohio App.3d 338, 2009-Ohio-1077.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080948.

Decided March 13, 2009.

Lindhorst & Dreidame Co., L.P.A., and Bradley McPeek, for appellee.

Ennis, Roberts & Fischer Co., L.P.A., and David J. Lampe, for appellants.

MARK P. PAINTER, Judge.

{¶ 1} We are confronted with an issue that has received little attention in Ohio—whether a student may appeal a suspension or expulsion from extracurricular activities. Though students have recourse to the courts for suspensions or expulsions from school itself, we hold that they have no appeal from a school's decision to suspend them from extracurricular activities. Any right of appeal must be created by the legislature.

## I. The Suit

{¶ 2} Charlie Mather ("Charlie") was a senior at Loveland High School. The school board prohibited Charlie from playing during 40 percent of Loveland's football season because he had violated the school's athletic code of conduct. On his behalf, his mother, Susan Mather, sued the school, its administrators, and its board of directors ("Loveland") for declaratory and injunctive relief. The court granted her motion for a temporary injunction, which allowed Charlie to play football uninterrupted. Loveland now appeals. (This case is not moot, because Charlie wishes to play lacrosse, a spring sport.)

## II. Violation

{¶ 3} Charlie and his father, Eric Mather, signed Loveland High School's Athletic Code. The code prohibits students from using or possessing alcohol at any time during the year, both on or off the school premises. It specifies that a first violation leads to the student's being "denied game participation for 40% of the scheduled games/contests."

{¶ 4} Loveland's school resource officer (an in-school law-enforcement officer) was also a member of the Loveland Police Department. He told Jeff Zidron, Loveland's athletic director, that over the summer Charlie had been caught by police with alcohol. The officer told Zidron that police had stopped a car and that Charlie had been sitting in the passenger seat with an open can of beer between his legs. He was arrested for underage drinking and possession of alcohol.

{¶ 5} Zidron met with Charlie's parents and separately with Charlie. No one denied that Charlie had possessed alcohol. Zidron concluded that Charlie had violated the athletic code of conduct and prohibited Charlie from participating in 40 percent of Loveland's football season.

{¶ 6} Charlie and his parents appealed to Molly Morehead, the principal of Loveland High School. Following an informal hearing, Morehead upheld the prohibition.

{¶ 7} Susan moved for a temporary restraining order, which the trial court granted. The trial court then granted a preliminary injunction, which prevented

Loveland from enforcing its prohibition of Charlie's participation in extracurricular activities. It reasoned that Loveland had come across the information about Charlie's arrest illegally because he was a juvenile and juvenile records are confidential.

### III. Assignments of Error

{¶ 8} Loveland argues on appeal that the trial court erred by (1) exercising jurisdiction when there is no statutory right to appeal a school district's determination about extracurricular activities and (2) holding that Susan had proved a likelihood of succeeding on the merits by clear and convincing evidence, because nothing had prevented the school resource officer from telling the athletic director about the arrest.

{¶ 9} Because Loveland is correct on both arguments, we reverse.

### IV. Jurisdiction

{¶ 10} The trial court erred by exercising jurisdiction over this case. Under both case law and the Ohio statutes addressing student extracurricular activities, Charlie had no statutory right to appeal the school's decision to the common pleas court. Furthermore, Charlie had no substantive due-process right to participate in extracurricular activities.

{¶ 11} The Ohio Constitution confers jurisdiction to common pleas courts over "all justiciable matters and such powers of review of proceedings of administrative officers and agencies as may be provided by law."

{¶ 12} School boards are statutory boards created by the Ohio General Assembly.[1] There is no right to appeal a school board's decision absent an express statutory right to appeal.[2]

{¶ 13} R.C. 3313.66(E) addresses a student's right to appeal a suspension or expulsion. Originally, the statute addressed both curricular and extracurricular activities. But in 1999, the Ohio legislature amended the statute—it removed the word "extracurricular." And in 1996, the Ohio legislature enacted R.C. 3313.664. This statute allows school boards to adopt policies for prohibiting students from participating in extracurricular activities.

{¶ 14} It is significant that the legislature both created a separate statute to address policies for prohibiting students from extracurricular activities and deleted "extracurricular" from the statute concerning the right to appeal a school

---

1. R.C. 3313.17.

2. *Lindblom v. Bd. of Tax Appeals* (1949), 151 Ohio St. 250, 39 O.O. 66, 85 N.E.2d 376, paragraph two of the syllabus.

board's decision. It is clear to us that the legislature intended to create a right of appeal to a common pleas court only for curricular activities. Extracurricular activities are governed solely by R.C. 3313.664, which provides no right to appeal a school board's decision. Perhaps the legislature reasoned that some issues should be left to school officials and that incidents such as this one should not be dragged into court.

{¶ 15} Case law bolsters this conclusion. The Tenth Appellate District determined that the court had "no authority to interfere with the exercise of the discretion vested in the Board of Education" concerning its creation of a policy on extracurricular school clubs.[3]

{¶ 16} Considering case law, the statutes, and our interpretation of legislative intent, we determine that R.C. 3313.66(E) addresses only a student's right to appeal expulsion or suspension from curricular activities, and that R.C. 3313.664 is the only statute that addresses prohibition from school extracurricular activities. R.C. 3313.664 does not create a legal right of appeal.

{¶ 17} Further, Charlie did not have a constitutional right to participate in sports. In *Glenn v. Harper*,[4] the federal Sixth Circuit Court of Appeals determined that there is no constitutionally protected due-process right to participate in sports. In *Glenn*, the plaintiff was an Ohio cheerleader who had been removed without a hearing from the cheerleading squad. The trial court had determined that Ohio had not created a property interest in participation in sports. Further, it had determined that "[n]othing in state law guaranteed the plaintiff a right of membership on the cheerleading squad and her legal status under state law was unchanged by her removal from the squad."[5] Thus, it held that the plaintiff had no due-process right to be a cheerleader and dismissed her complaint, as the trial court should have done in this case. The Sixth Circuit upheld this dismissal.

{¶ 18} Our job is not to decide whether there should be a right to appeal to the courts a suspension from sports or any other extracurricular activity. The General Assembly can create that right if it so chooses. But it has not—it has deleted it from the statute. From a policy standpoint, some could find it troubling that a school board can decide to prohibit a student from playing a sport for nearly any reason, and that the student has no legal recourse. But it is not our role to create a right to appeal—the legislature is the only body that may create such a right.

---

3. *Holroyd v. Eibling* (1962), 116 Ohio App. 440, 447–448, 22 O.O.2d 264, 188 N.E.2d 797.

4. *Glenn v. Harper*, (C.A.6, 1980), 620 F.2d 302.

5. *Glenn v. Harper* (Mar. 17, 1978), N.D. Ohio No. C76–106.

{¶ 19} Because there is no constitutional right to participate in sports and because there is no statutory right to appeal a school board's decision, Charlie and his mother had no legal right of appeal. Thus, the trial court did not have jurisdiction over his case and had no right to prevent Loveland from enforcing Charlie's prohibition from playing during 40 percent of the football season.

██ {¶ 20} We note that the Loveland Athletic Code guarantees students that the school will administer its drug and alcohol policy in accordance with due-process procedures. Charlie was afforded procedural due process—though there is no constitutional right to it for extracurricular matters. Loveland conducted two separate hearings. The first was before Loveland High School's athletic director, and the second was before the school principal. Academic decisions are not subject to formal due-process hearings. Instead, an informal meeting between the student and the representatives of the school board is sufficient.[6]

{¶ 21} Therefore, we determine that Charlie was afforded due process in accordance with the school policy and that he did not have a right to appeal to the common pleas court. The trial court did not have the authority to hear this case.

### V. Juvenile Arrest Records

█ {¶ 22} Even if the trial court had had jurisdiction over this appeal, Susan still would not have prevailed. Ohio's public-records law, the so-called Sunshine Act, requires all records kept by any public office to be available to the public, unless a state or federal statute prohibits their release.[7] The Loveland Police Department is a government entity, and its records are subject to the Sunshine Act.

{¶ 23} The trial court believed that R.C. 2151.14, which discusses juvenile records, had some bearing on this case. It does not. The statute did not prevent the Loveland police officer from revealing information about Charlie's arrest.

{¶ 24} R.C. 2151.14 provides that records pertaining to the probation department are confidential and shall not be made public. Further, R.C. 2151.14(D) provides that "in connection with a disposition * * * when a child has been found to be an unruly child, * * * a delinquent child, or * * * a juvenile traffic offender, the court may issue an order requiring * * * law enforcement agencies * * * that have records related to the child in question to provide copies * * * to * * * (e) A board of education of a public school district."

---

6. *Bd. of Curators of Univ. of Missouri v. Horowitz* (1978), 435 U.S. 78, 85–86, 98 S.Ct. 948, 55 L.Ed.2d 124.

7. R.C. 149.43(A).

{¶ 25} First, the statute makes confidential only records from the probation department. Juvenile arrest records are not statutorily confidential. Second, R.C. 2151.14(D) involves only those juveniles who have already been adjudicated as delinquent or unruly children, or as juvenile traffic offenders. Third, R.C. 2151.14(D) may require a police department to release records to a school board, but it says nothing about a police department being prohibited from sharing this information.

{¶ 26} No statute excepts Charlie's arrest record from the Ohio Sunshine Law. Thus, the police officer was entitled to tell Loveland about Charlie's arrest.

{¶ 27} For the foregoing reasons, we reverse the trial court's judgment and do what the trial court should have done—dismiss this case for lack of jurisdiction.

Judgment reversed
and final judgment entered.

HILDEBRANDT, P.J., and DINKELACKER, J., concur.